No. 24-2801

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YOLANY PADILLA, et al.
Plaintiffs-Appellees,

v.

IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

## APPELLANTS' EXCERPTS OF RECORD
## VOLUME 1 OF 2

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
SARAH S. WILSON
*Assistant Directors*
LAUREN C. BINGHAM
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
202-616-4458
DAVID KIM
*Senior Litigation Counsel*
BICHNGOC T. DO
*Trial Attorney*

ER-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | CASE NO. C18-928 MJP<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 200.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 202), the Reply (Dkt. No. 204), and all supporting materials, the Court DENIES in part and GRANTS in part the Motion.

**BACKGROUND**

Plaintiffs and the Class they represent are "inadmissible" noncitizens who have come to the United States to seek asylum. After being placed in expedited removal proceedings and

ORDER ON DEFENDANTS' MOTION TO DISMISS - 1

ER-2

1 detained, Plaintiffs have been found to have a credible fear of persecution and their asylum
2 claims were transferred to standard removal proceedings. In June 2018, Plaintiffs filed suit to
3 enforce their right to a bond hearing that complies with the Due Process Clause while they await
4 a determination on their asylum application. Although all four named Plaintiffs were given bond
5 hearings, they fear that they and similarly-situated individuals face the risk of being re-detained
6 and deprived of bond hearings in light of the Attorney General's decision that bond hearings
7 shall no longer be given to asylum seekers similarly situated to Plaintiffs. See Matter of M-S-, 27
8 I. & N. 509 (A.G. 2019).

9     In 2019, the Court issued a nationwide preliminary injunction that required Defendants to
10 provide bond hearings to Plaintiffs and similarly-situated individuals, and set certain procedural
11 requirements consistent with due process. After the Ninth Circuit largely upheld the injunction,
12 the Supreme Court vacated the injunction and remanded the matter to the Ninth Circuit for
13 further consideration in light of its decision in Dep't of Homeland Sec. v. Thuraissigiam, 591
14 U.S. ___, 140 S. Ct. 1959 (2020). The Ninth Circuit then remanded the case to this Court with
15 instructions to vacate the injunction and for further consideration in light of Thuraissigiam and
16 two other Supreme Court decisions. Plaintiffs have now filed their Fourth Amended Complaint
17 through which they continue to seek to enforce their right to bond hearings that comport with due
18 process. Defendants challenge the Court's jurisdiction over such claims and the adequacy of the
19 allegations in light of Thuraissigiam and other precedent.

20     To understand the merits of Defendants' Motion to Dismiss, the Court first examines the
21 case's procedural history before looking at the statutory framework and the factual allegations.

**A.  Procedural History**

The Court initially denied, in part, Defendants' motion to dismiss, and certified two classes of similarly-situated individuals—those seeking a timely credible fear interview (the Credible Fear Class)[1] and those seeking a bond hearing comporting with due process (the Bond Hearing Class). (See Dkt. Nos. 91, 100, 102, 158.) The Court then issued and modified a preliminary injunction, requiring the Executive Office for Immigration Review to: (1) conduct bond hearings within seven days of a request for those in the Bond Hearing Class; (2) satisfy the burden of proof as to why the Bond Hearing Class members should not be released on bond, parole or other conditions; (3) record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and (4) produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing. (See Dkt. Nos. 110, 149.)

Defendants timely appealed and the Ninth Circuit upheld the injunction in large part, but remanded for consideration of whether all of the procedural requirements and the nationwide scope of the injunction were appropriate. Padilla v. Immigr. & Customs Enf't, 953 F.3d 1134, 1140 (9th Cir. 2020), cert. granted, judgment vacated, 141 S. Ct. 1041 (2021). The Supreme Court then vacated the Ninth Circuit's opinion and remanded the matter to the Ninth Circuit for further consideration in light of its decision in Dep't of Homeland Sec. v. Thuraissigiam, ___ U.S. ___, 140 S. Ct. 1959 (2020). Immigr. & Customs Enf't v. Padilla, 141 S. Ct. 1041 (2021). The Ninth Circuit then remanded the case to this Court with "instructions to vacate the preliminary injunction and for further consideration in light of the Supreme Court's decisions in

---

[1] The Credible Fear Class's claims are not relevant to Defendants' Motion to Dismiss, given a pending settlement of that class's claims. (Dkt. Nos. 213, 216.)

1  Biden v. Texas, ___ U.S. ___,142 S. Ct. 2528 (2022), Garland v. Aleman Gonzalez, __ U.S.__ ,
2  142 S. Ct. 2057 (2022), and . . . Thuraissigiam, 140 S. Ct. 1959 (2020)." Padilla v. Immigr. &
3  Customs Enf't, 41 F.4th 1194 (9th Cir. 2022).

4      Upon receipt of the mandate, the Court vacated the preliminary injunction. (Dkt. No.
5  183.) Plaintiffs then filed their Fourth Amended Complaint, (Dkt. No. 198), and Defendants
6  moved for dismissal of all claims for lack of subject matter jurisdiction and for failure to state a
7  claim. (Dkt. No. 200.) Since then, the Parties settled the credible-fear-related claims, and the
8  Court has set a final fairness hearing on the settlement. (Dkt. No. 216.) The Parties agree that the
9  Motion to Dismiss should only be decided as to the Bond Hearing Class and their bond-hearing-
10 related claims. (Dkt. No. 213.) Accordingly, this Order omits any analysis of the credible fear
11 claims.

12 **B.    Statutory Background**

13      To understand Plaintiffs' particular status within the immigration process, the Court
14 reviews the relevant statutory framework.

15      Plaintiffs are a class of noncitizens who were determined to be inadmissible for entry into
16 the United States under 8 U.S.C. § 1183, and ordered removed through an expedited removal
17 process. 8 U.S.C. § 1225(b). But Plaintiffs exercised their right under 8 U.S.C. §
18 1225(b)(1)(A)(ii) to apply for asylum. A noncitizen indicating an intention to apply for asylum is
19 referred for an interview to determine whether he or she has a credible fear of persecution or
20 torture if returned to their home country (a "credible fear interview"). 8 U.S.C. §
21 1225(b)(1)(A)(ii). Any noncitizen subject to this process "shall be detained pending a final
22 determination of credible fear of persecution, and, if found not to have such a fear, until
23 removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). As the Supreme Court explained, "[i]f the asylum
24

1 officer finds an applicant's asserted fear to be credible, the applicant will receive 'full
2 consideration' of his asylum claim in a standard removal hearing." Thuraissigiam, 140 S. Ct. at
3 1965 (quoting 8 C.F.R. § 208.30(f); citing 8 U.S.C. § 1225(b)(1)(B)(ii)). "Applicants who are
4 found to have a credible fear may also be detained pending further consideration of their asylum
5 applications." Thuraissigiam, 140 S. Ct. at 1965 (citing 8 U.S.C. § 1225(b)(1)(B)(ii)). And until
6 July 2019, noncitizens like Plaintiffs were entitled to bond hearings before an immigration judge,
7 as noncitizens in full removal proceedings usually are. See Matter of X-K-, 23 I. & N. Dec. 731,
8 731 (BIA 2005). After this case began, the Attorney General overruled Matter of X-K-. Matter of
9 M-S-, 27 I. & N. Dec. 509 (2019). The Attorney General interpreted 8 U.S.C. § 1225(b)(1)(B)(ii)
10 to require mandatory detention without bond hearings for asylum seekers who were initially
11 subject to expedited removal but later transferred to full removal proceedings after establishing a
12 credible fear. See Matter of M-S-, 27 I. & N. Dec. at 515–17. Under Matter of M-S-, the only
13 possibility for release available to noncitizens in this category is a discretionary grant of parole
14 by the Department of Homeland Security for "urgent humanitarian reasons or significant public
15 benefit" pursuant to 8 U.S.C. § 1182(d)(5). Id. at 516–17.

16 **C.    Factual Background**

17       Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez filed this
18 class action to challenge, among other things, the government's alleged policy and practice of
19 failing to provide constitutionally-adequate bond hearings for detained asylum seekers who have
20 been found to have a credible fear and whose asylum applications remain pending. Plaintiffs
21 allege they were detained at the border for entering without inspection and placed into expedited
22 removal proceedings. (4AC ¶¶ 62-64, 73-76, 87-90, 105.) But each successfully made showings
23 of credible fear and their asylum applications were placed into standard removal proceedings.
24

1  (Id. ¶¶ 69, 79, 95, 108.) After receiving positive credible fear findings, each Plaintiff was given a
2  bond hearing. (Id. ¶¶ 69-70, 80, 97, 109-10.) At their bond hearings, Plaintiffs were all required
3  to prove they were not a danger or flight risk, and no verbatim transcript or recording of the
4  proceedings was made. (Id. ¶¶ 70-71, 81-84, 98, 111.) Although Padilla and Vasquez were
5  released after posting $8,000 bonds, both Plaintiffs Guzman and Orantes were denied bond with
6  little or no explanation. (Id. ¶¶ 70-71, 82-85, 99-100, 111.) Guzman and Orantes were released
7  from detention only after the government was required to comply with a preliminary injunction
8  in another matter. (Id. ¶¶ 82-85, 102.) All four Plaintiffs aver that they and Class members face
9  the prospect of being re-detained without a bond hearing. (Id. ¶¶ 72, 86, 103, 122, 141.)

## ANALYSIS

### A.  Standards of Review

12  Defendants challenge the Court's subject matter jurisdiction under Rule 12(b)(1). Such
13  challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the
14  plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal
15  jurisdiction.'" Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting Safe Air for
16  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast,
17  contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside
18  the pleadings." Id. Although Defendants fail to label the form of their Rule 12(b)(1) "attack," the
19  Court finds that it is a "facial" challenge that does not contest the truth of any of Plaintiffs'
20  factual allegations. As such, the Court will resolve the challenge "as it would a motion to dismiss
21  under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable
22  inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a
23  legal matter to invoke the court's jurisdiction." Id.

1    Defendants also move for dismissal under Rule 12(b)(6), arguing that even if the Court

2    has jurisdiction, Plaintiffs have not stated a claim. (See Defs. MTD at 8.) "A complaint may fail

3    to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts

4    alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th

5    Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as

6    true and construe the complaint in the light most favorable to the non-movant. Wyler Summit

7    P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must

8    contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

9    face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550

10   U.S. 544, 570 (2007)).

11   **B.      The Court Has Subject Matter Jurisdiction**

12          Defendants incorrectly argue that two provisions of the Illegal Immigration Reform and

13   Immigrant Responsibility Act (IIRIRA) bar Plaintiffs' claims. Neither provision applies to this

14   action.

15          The first provision Defendants invoke, 8 U.S.C. § 1252(a)(2)(A) is entitled "Matters not

16   subject to judicial review." It contains a subparagraph Defendants cite called "review relating to

17   section 1225(b)(1)", which states:

18       Notwithstanding any other provision of law (statutory or nonstatutory), including section
         2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of
19       such title, no court shall have jurisdiction to review—

20       (i) except as provided in subsection (e), any individual determination or to entertain any
         other cause or claim arising from or relating to the implementation or operation of an
21       order of removal pursuant to section 1225(b)(1) of this title,

22       (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the
         provisions of such section,
23
         (iii) the application of such section to individual aliens, including the determination made
24       under section 1225(b)(1)(B) of this title, or

ORDER ON DEFENDANTS' MOTION TO DISMISS - 7                                                              ER-8

1       (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

2 8 U.S.C. § 1252(a)(2)(A).

3       The second provision Defendants invoke, 8 U.S.C § 1252(e), is entitled "Judicial review of orders under section 1225(b)(1)," and contains a subparagraph Defendants cite called "Challenges on validity of the system." It reads:

       Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

       (i) whether such section, or any regulation issued to implement such section, is constitutional; or

       (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3).

       First, the Court continues to find that § 1252(a)(2)(A) has no application to Plaintiffs' claims. (See Order on Mot. to Dismiss at 6-7 (Dkt. No. 91); Order on Mot. for Reconsideration at 2 (Dkt. No. 100).) This provision only applies to the procedures and policies necessary to implement the removal process. Here, Plaintiffs' bond hearing claims do not challenge the removal process—just whether they should be afforded a bond hearing after obtaining a positive credible fear finding. As the Court previously explained: "The gravamen of Plaintiffs' lawsuit is that Defendants have not adopted any formal procedure or policy regarding when . . . the bond hearings of which they complain will be held; hence the issue of impermissible 'indefinite detention.'" (Order Denying Mot. for Reconsideration at 2 (Dkt. No. 100).) The Court finds no reason to reconsider this decision.

ORDER ON DEFENDANTS' MOTION TO DISMISS - 8

ER-9

1  Second, the Court continues to find that § 1252(e)(3), does not strip the Court of

2 jurisdiction. The Court previously explained that § 1252(e)(3) addresses "challenges to the

3 removal process itself, not to detentions attendant upon that process." (Order Modifying Prelim.

4 Inj. at 10 (Dkt. No. 149).) The Court relied on the Supreme Court's decision in <u>Jennings v.

5 Rodriguez</u>, 138 S. Ct. 830 (2018), which rejected application of a similar jurisdiction-stripping

6 provision to claims challenging the detention process for those facing removal. (<u>Id.</u>) In <u>Jennings</u>,

7 the Supreme Court explained that there is jurisdiction to review the legality of detention under §

8 1225(b) where petitioners were "not asking for review of an order of removal; . . . not

9 challenging the decision to detain them in the first place or seek removal; and . . . not even

10 challenging any part of the process by which their removability will be determined." <u>Jennings</u>,

11 138 S. Ct. at 841. The same logic applies here because Plaintiffs challenge only the

12 constitutionality of their detention, and the relief they seek does implicate the removal system.

13 The Court rejects Defendants' argument and continues to find that it has jurisdiction over the

14 claims regarding bond hearings.

15  The Court DENIES Defendants' Motion as to jurisdiction, and finds that it has subject

16 matter jurisdiction over Plaintiffs' claims.

17 **B.**  **Plaintiffs Continue to State Valid A Due Process Claim**

18  Defendants primarily argue that <u>Thuraissigiam</u> compels the Court to find that Plaintiffs

19 enjoy only those procedural protections provided for by statute, and that this does not include

20 bond hearings. (<u>See</u> Defs. MTD at 12-13.) Defendants further contend that beyond

21 <u>Thuraissigiam</u>, Plaintiffs have failed to allege a valid substantive or procedural due process

22 claim. The Court finds no merit in any of Defendants' arguments.

23

24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 9             ER-10

1         **1.**     <u>**Thuraissigiam** does not bar the due process claim</u>

2       The Court stands unconvinced that the Supreme Court's decision in <u>Thuraissigiam</u>

3 requires dismissal of Plaintiffs' due process claim. Given the distinct claims presented in

4 <u>Thuraissigiam</u>, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.

5       In <u>Thuraissigiam</u>, the respondent argued that due process entitled him to an opportunity

6 to reapply for asylum on account of certain alleged defects he identified in the process that led to

7 rejection of his asylum application. 140 S. Ct. at 1968, 1982-83. To understand this claim, the

8 Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in

9 the case before this Court, the respondent in <u>Thuraissigiam</u> was placed into expedited removal

10 proceedings after being detained upon his entry to the United States where he was found

11 inadmissible. <u>Id.</u> at 1967. Like Plaintiffs here, the respondent applied for asylum. <u>Id.</u> But unlike

12 Plaintiffs here, the respondent in <u>Thuraissigiam</u> was unable to convince the immigration officer,

13 a supervising officer, or immigration judge that he faced a credible fear of persecution if returned

14 to his home country. <u>Id.</u> at 1967-68. Having failed to present a bona fide asylum claim, the

15 respondent was subject to "remov[al] from the United States without further hearing or review."

16 8 U.S.C. § 1225(b)(1)(B)(iii)(I); <u>Thuraissigiam</u>, 140 S. Ct. at 1968. The respondent then filed a

17 habeas petition through which he sought a writ of habeas corpus, an injunction, or writ of

18 mandamus directing the Department of Homeland Security to provide him a "new opportunity to

19 apply for asylum and other applicable forms of relief." <u>Thuraissigiam</u>, 140 S. Ct. at 1968. He

20 argued that he had been deprived of a meaningful opportunity to establish his credible fear

21 claims and that the wrong standards were applied. <u>Id.</u> But the respondent "made no mention of

22 release from custody." <u>Id.</u>

23

24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 10

1  The Supreme Court in Thuraissigiam, rejected respondent's due process claim. The Court

2 explained that "aliens who arrive at ports of entry . . . are 'treated' for due process purposes 'as if

3 stopped at the border.'" Id. at 1982 (quoting Shaughnessy v. United States ex rel. Mezei, 345

4 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain

5 admission, these individuals possess "only those rights regarding admission that Congress has

6 provided by statute." Id. at 1983. The Court based this conclusion on the proposition that "[t]he

7 power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the

8 political department of the government plenary authority to decide which aliens to admit, and a

9 concomitant of that power is the power to set the procedures to be followed in determining

10 whether an alien should be admitted." Id. at 1982 (citation and quotation omitted). With these

11 principles in mind, the Court held that as to his request for admission into the United States, the

12 respondent had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of

13 'establish[ing] eligibility for asylum.'" Id. at 1983 (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)).

14 Having been "given that right," the respondent was entitled to no more process in his efforts to

15 gain admission to the United States. Id.

16  Defendants ask the Court to extract from Thuraissigiam a broad rule that any

17 inadmissible noncitizen possesses only those due process rights afforded to them by statute,

18 regardless of the nature of their status or the relief they seek. But such a conclusion is untethered

19 to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due

20 process is necessarily constrained to challenges to admissibility to the United States. This was

21 the sole claim presented and the respondent expressly asked for a chance to reapply for asylum

22 and admission. The Court then exclusively analyzed whether a noncitizen applicant for

23 admission has any "rights regarding admission" beyond those set by Congress. Thuraissigiam,

24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 11  ER-12

140 S. Ct. at 1982-83. The Court answered no broader question. Moreover, the Court justified its rejection of respondent's argument on the theory that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." Id., 140 S. Ct. at 1982 (citation and quotation omitted) (emphasis added). The Court's holding explicit constrains itself to determining only whether those challenging the admission process have due process rights: "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." Id. at 1983 (emphasis added). Defendants present no cogent reason why the Court should extend this limited holding to any noncitizen within the immigration process regardless of the legal challenge presented. Defendants' argument fails to explain how such an application of Thuraissigiam's limited holding tracks of the facts and claims presented in Thuraissigiam, the Supreme Court's reasoning, or the Court's explicit language limiting its holding to "rights regarding admission.

      The holding in Thuraissigiam does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections. Unlike respondent in Thuraissigiam, Plaintiffs do not challenge the admission process in any way or assert a right to remain in the United States. They merely seek a chance to apply for release on bond pending resolution of their bona fide asylum claims that remain to be resolved in standard removal proceedings. Nothing in Thuraissigiam suggests Plaintiffs lack such a due process right. As such, the Court DENIES the Motion as to this issue.

      **2.    Plaintiffs adequately allege a Due Process claim**

Plaintiffs have sufficiently alleged a substantive and procedural due process claim.

1        Substantive Due Process

2        The Court finds that Plaintiffs have alleged a right to substantive due process to bond

3   hearings. As the Ninth Circuit concluded in affirming the Court's preliminary injunction, "all

4   persons in the United States—regardless of their citizenship status, means or legality of entry, or

5   length of stay—are entitled to the protections of the Due Process Clause." Padilla, 953 F.3d at

6   1142 (citing Zadvydas v. Davis, 533 U.S. 678, 693 (2001)). As the Court in Zadvydas explained,

7   "the Due Process Clause applies to all 'persons' within the United States, including aliens,

8   whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693. Due

9   process protects against immigration detention that is not reasonably related to the legitimate

10  purpose of effectuating removal or protecting against danger and flight risk. See id. at 690-91.

11  And the Supreme Court has consistently held that non-punitive detention violates the

12  Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized

13  hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's

14  legitimate goals. See United States v. Salerno, 481 U.S. 739, 750–51 (1987); Foucha v.

15  Louisiana, 504 U.S. 71, 79 (1992); Kansas v. Hendricks, 521 U.S. 346, 360, 364 (1997).

16       As Plaintiffs concede, there is one exception to this line of Supreme Court cases: Demore

17  v. Kim, 538 U.S. 510 (2003). In Demore, the Supreme Court rejected a due process challenge to

18  mandatory detention of noncitizens who had committed certain enumerated offenses under 8

19  U.S.C. § 1226(c). Id. at 517, 523, 527-30. The Court agrees with Plaintiffs that Demore remains

20  distinguishable from the claims presented here. First, the Court in Demore held that the "narrow"

21  detention policy before it "during a limited period" necessary to arrange for removal was

22  reasonably related to the government's purpose of effectuating removal and protecting public

23  safety. 538 U.S. at 526-28. The Court did not apply a categorical bar to all noncitizens facing

24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 13

removal. Instead, it considered a narrow category of noncitizens who had committed certain enumerated crimes and found that the voluminous Congressional record before it justified denying bail given the substantial rate at which such individuals either reoffended or absconded. Id. at 518-20. Here, Defendants can point to no similar public safety concerns or flight risk that might apply to those, like Plaintiffs, with bona fide asylum claims and who desire to remain in the United States. Second, the length of detention in Demore was far briefer than the length of detention at issue here. In Demore, the mandatory detention pending removal was 47 days in 85% of the cases and about four months for those 15% of cases that were appealed to the BIA. Id. at 529-30. Here, based on albeit dated information, Plaintiffs and the Class face a median time of five to six months for adjudication of their claim by an immigration judge, nearly a year for cases appealed to the BIA, and still longer for judicial review. See Declaration of David Hausman ¶ 8 (Dkt. No. 132); Admin Off. Of U.S. Courts, U.S. Court of Appeals – Judicial Caseload Profile (Dec. 31, 2022) https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2022.pdf; 4AC ¶ 59.) Nothing in Demore suggests that such a lengthy detention would be justified to keep such individuals in custody particularly where there is no evidence presently before the Court that Plaintiffs and the Class present a particular risk of flight or danger.

Procedural Due Process

The Court finds Plaintiffs have sufficiently alleged a procedural due process claim.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—

lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. Non-punitive detention in the immigration context violates the Due Process Clause unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 433 U.S. at 690 (quoting Hendricks, 521 U.S. at 356). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). So while "[t]he government has legitimate interests in protecting the public and in ensuring that non-citizens in removal proceedings appear for hearings, . . . any detention incidental to removal must 'bear[] [a] reasonable relation to [its] purpose.'" Hernandez, 872 F.3d at 990 (quoting Zadvydas, 533 U.S. at 690). To satisfy procedural due process, non-punitive detention must be accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure the detention serves the government's legitimate goals. See, e.g., Salerno, 481 U.S at 750-51; Foucha, 504 U.S. at 79; Hendricks. 421 U.S. at 350, 364; Zadvydas, 533 U.S. at 692.

Plaintiffs continue to allege a viable procedural due process claim. First, they have alleged a substantial liberty interest in being free from confinement and an interest in preventing arbitrary detention. Second, Plaintiffs have alleged that the parole process available to them under 8 U.S.C. § 1182(d)(5)(A) is not a constitutionally adequate substitute for a bond hearing particularly since it does not test the necessity of detention. The parole process does not afford the noncitizen an in-person adversarial hearing before a neutral decisionmaker where he or she may present witness testimony or evidence. See 8 C.F.R. § 212.5. Additionally, the ICE

1  detention officer need not make any factual findings or provide their reasoning, and there is no
2  apparent right to an administrative appeal. This process is not an adequate substitute for a bail
3  hearing to test the legitimate need for continued detention. See Zadvydas, 533 U.S. at 692.
4  Lastly, Plaintiffs have sufficiently alleged that the government lacks a legitimate interest in
5  denying bond hearings before a neutral decisionmaker to detained noncitizens with pending bona
6  fide asylum applications. It is true that "[t]he government has legitimate interests in protecting
7  the public and in ensuring that non-citizens in removal proceedings appear for hearings . . . ."
8  Hernandez, 872 F.3d at 990. But accepting Plaintiffs' allegations as true, the government's
9  interest in protecting the public or avoiding additional administrative burdens do not outweigh
10 the countervailing liberty interest at stake. At this juncture, the Court finds that the Plaintiffs
11 have alleged a valid procedural due process claim and DENIES Defendants' Motion as to Count
12 I.

13       The Court notes that this Order does not resolve whether Plaintiffs are entitled to a bond
14 hearing within the seven day time-frame they have requested in their complaint. Plaintiffs have
15 sufficiently alleged that they are entitled to a bond hearing in an expedited fashion. See Order on
16 Motion to Dismiss at 13-14 (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1177 (N.D. Cal.
17 2017). The Court is not required to determine at this stage the specific time frame that applies or
18 is required. Further development of the factual record is necessary to make any affirmative
19 determination as to the precise timeframe or other parameters. At this point, the Court merely
20 finds the claims sufficiently alleged.

21 **C.     APA Claims**

22       The Court agrees with Plaintiffs that their APA claims related to the bond hearing
23 procedural safeguards (Counts II and VI) survive dismissal. Defendants sought dismissal of these
24

1 claims on the theory that Plaintiffs lack a due process right to bond hearings. (Defs. MTD at 22.)
2 Because Plaintiffs have shown a valid due process right to prompt bond hearings before neutral
3 decisionmakers, the attendant APA claims are adequately alleged. Defendants also argue that the
4 there is no final agency action to review. (Id.) But the Court remains convinced that the
5 "procedural defects alleged by [Plaintiffs] are part and parcel of the bond hearing, which is
6 indisputably a 'final agency action' from which legal consequences flow." (Order on MTD at 18
7 (Dkt. No. 91).) The Court therefore DENIES the Motion as to Counts II and VI.

8 But two of Plaintiffs' APA claims must be dismissed. First, Plaintiffs concede they
9 included Count V in the Fourth Amended Complaint "to preserve it for review," given that the
10 Court has previously dismissed it. (Pls. Opp. at 22.) Plaintiffs offer no reason why this claim
11 should survive dismissal and the Court again DISMISSES this claim for the same reasons as set
12 forth in the original Order on the MTD. (See Order on MTD at 16-18.) Second, Plaintiffs have
13 withdrawn their APA challenge to the Matter of M-S- set out in Count III and the Court
14 DISMISSES this claim. (Pls. Opp. at 2 n.1.)

## CONCLUSION

16 The Court has jurisdiction to hear Plaintiff's claims. And the Court remains convinced
17 that Plaintiffs have alleged a viable due process claim and related claims under the APA. The
18 Court finds that the Supreme Court's decision in Thuraissigiam does not undermine Plaintiffs'
19 due process claim. And the Court finds that Plaintiffs have adequately alleged an actionable
20 substantive and procedural due process claim. The Court DENIES the Motion as to Counts I, II,
21 and VI. But the Court GRANTS the Motion as to Counts II and V, and DISMISSES them.
22 \\
23 \\
24

1 | The clerk is ordered to provide copies of this order to all counsel.

2 | Dated December 4, 2023.

*[signature]*

Marsha J. Pechman
United States Senior District Judge